**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AUTO FAST FREIGHT, INC., Respondent.**

No. 84–7829.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 1985.

Decided July 10, 1986.

John G. Elligers, Joseph Oertl, N.L.R.B., Washington, D.C., for petitioner.

William J. Brunick, Donald R. Alvarez, Brunick, Pyle & Ludvigsen, San Bernardino, Cal., for respondent.

Before GOODWIN and BOOCHEVER, Circuit Judges, and SPENCER WILLIAMS,[*] District Judge.

SPENCER WILLIAMS, District Judge:

Respondent, Auto Fast Freight, Inc. ("Auto Fast"), is charged by the petitioner, National Labor Relations Board ("Board") with violating sections 8(a)(1), (3) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(1), (3) and (5) (1982). The Board found that Auto Fast committed several unfair labor practices, and ordered corresponding relief. 272 N.L.R.B. 561 (1984). The matter is before the court on the Board's application for enforcement of its order. Auto Fast seeks review of the Board's decision and order, on the ground that the Board's decision is

[*] The Honorable Spencer Williams, United States District Judge for the Northern District of California, sitting by designation.

not supported by substantial evidence. Because we find ample support in the record for the Board's findings and factual conclusions, we grant the Board's petition for enforcement, and deny Auto Fast's request for review.

## FACTS AND PROCEEDINGS BELOW

Since 1962, Auto Fast has been a signatory to a series of collective bargaining agreements with three union locals, involving a single unit of drivers, driver helpers, dockworkers and mechanics employed at Auto Fast's facilities in Montebello, San Bernardino and San Diego, California.[1] The most recent collective bargaining agreement was signed in 1979, for a term expiring on March 31, 1982. That contract was a "short form" agreement, adopting the National Master Freight Agreement and the Western Master Area Freight Agreement, as well as all supplements thereto.

Beginning in 1979, Auto Fast began to incur substantial operating losses, due to the effects of inflation and the deregulation of the trucking industry. In January, 1982, Auto Fast's financial advisor recommended immediate action to reduce costs. In the meantime, in November, 1981, Auto Fast and the Western Conference of Teamsters began exchanging letters proposing the commencement of bargaining for a new contract. Both sides indicated a desire to meet, but they failed to reach agreement as to the date and location for such a meeting. 272 N.L.R.B. at 562. The parties did not meet until April 9, 1982, nine days after the collective bargaining agreement expired.

As a result of its deteriorating financial condition and its inability to meet with the union, Auto Fast decided to act on its own to reduce costs. On April 5, 1982, five days after the expiration of the collective bargaining agreement, Auto Fast discontinued its payments to the union's health and welfare fund (substituting a health insurance plan of its own), and reduced the wages of all unit employees by approximately $2.00 an hour. These actions were taken without notification to, or bargaining with, the Western Conference or any local. 272 N.L.R.B. at 562.

In late March, 1982, two members of Local 542, John Sloan and Manuel Garza, were allegedly told by a company manager that Auto Fast was about to "go non-union," and that they would have to discontinue their union membership in order to continue working there. When Sloan and Garza refused to relinquish their membership in the union, they were allegedly forced to resign from their jobs. Auto Fast contends that these employees voluntarily submitted their resignations because of the uncertainty surrounding the expiration of the collective bargaining agreement.

The Board adopted the findings of its administrative law judge, that the company refused to bargain, in violation of sections 8(a)(5) and (1) of the NLRA, by unilaterally discontinuing payments to the union's health and welfare fund, by unilaterally instituting a new medical insurance plan for employees, and by unilaterally decreasing the wages of unit employees. The ALJ and Board also found that the company constructively discharged Sloan and Garza because of their union membership, in violation of sections 8(a)(3) and (1) of the NLRA.

## STANDARD OF REVIEW

On review in this court, the NLRB's findings of fact "if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). *See Walla Walla Union-Bulletin, Inc. v. NLRB*, 631 F.2d 609, 612 (9th Cir.1980). A court reviewing the Board's factual findings "may not 'displace the

---

1. The locals are the Package and Utility Drivers Local No. 396; General Truck Drivers, Warehousemen and Helpers Union Local 467; and Teamsters, Chauffeurs, Warehousemen and Helpers Local 542. Each is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Auto Fast dealt directly with the Western Conference of Teamsters ("Western Conference"), a branch of the International union, on most, if not all, of the matters at issue in this case. Except where otherwise noted, these entities will be referred to collectively as the "union".

Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*'" *NLRB v. Walton Manufacturing Co.*, 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)).

ANALYSIS

I. Unilateral Change of a Term or Condition of Employment

■ Section 8(a)(5) of the NLRA makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees...." Collective bargaining is defined in § 8(d) as requiring an employer and union "to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." *See Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 210, 85 S.Ct. 398, 402, 13 L.Ed.2d 233 (1964). There is no dispute that subjects such as wages, health care plans and insurance plans are within § 8(d)'s definition of mandatory subjects of bargaining. Unless and until the parties to a collective bargaining agreement "bargain to impasse" on a mandatory subject of bargaining, an employer's unilateral action with respect to such a matter will constitute a refusal to bargain. *NLRB v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). Even after the collective bargaining agreement has expired, the employer is prohibited from taking unilateral action until the parties have bargained to impasse. "The employer is required to maintain [the] status quo following the expiration of the collective bargaining agreement until the parties negotiate a new agreement or bargain in good faith to impasse." *NLRB v. Carilli*, 648 F.2d 1206, 1214 (9th Cir.1981). *See also Clear Pine Mouldings, Inc. v. NLRB*, 632 F.2d 721, 729 (9th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981).

■ There exists a narrow exception to the bargain to impasse rule: where, upon expiration of a collective bargaining agreement, the union has avoided or delayed bargaining, and the employer has given notice to the union of the specific proposals the employer intends to implement, the employer may unilaterally implement the proposals without first bargaining to impasse. *Stone Boat Yard v. NLRB*, 715 F.2d 441, 444 (9th Cir.1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). *Accord, M & M Building & Electrical Contractors, Inc.*, 262 N.L.R.B. 1472, 1476–77 (1982).

Auto Fast acknowledges that it acted unilaterally, without first bargaining to impasse. Auto Fast contends, however, that its dire financial condition and the union's unwillingness to meet justified its unilateral action. Although there is some evidence in the record that would support Auto Fast's position, the Board rejected Auto Fast's interpretation of the facts. The question on this appeal, then, is whether substantial evidence existed for the Board to reach its conclusion.

■ As to Auto Fast's argument that its precarious financial position made immediate action imperative, the Board, noting that the company had been aware of its severe economic problems at least since January, 1982, found that "there was no reasonable basis for taking such action so soon after expiration of the contract" on March 31, 1982. 272 N.L.R.B. at 563. Although Auto Fast protests that the evidence *it* presented to the ALJ showed a high degree of urgency, the Board's resolution of this factual dispute is fully supported by substantial evidence. The Board had before it evidence of the company's mounting losses beginning in 1979 and the increasing financial pressure on the company in January and February of 1982. The Board could reasonably conclude from this evidence that Auto Fast's financial difficulties did not, on April 5, 1982, suddenly rise to the level of urgency that would justify taking unilateral action.

■ As to Auto Fast's contention that the union was avoiding the bargaining ta-

ble, the Board concluded that "there is nothing in the record to show that the Unions intentionally were ducking Respondent.... It does appear that the Unions were not well coordinated, and possibly were uncertain of their administrative responsibilities, but those facts do not justify Respondent's unilateral actions." *Id.* Again, substantial evidence supports this conclusion. In the exchange of letters between the parties beginning in November, 1981, both sides clearly indicated a desire to meet, and each proposed dates and locations; however, no meeting occurred until April 9, 1982. 272 N.L.R.B. at 562. On the record before the Board, it would have been possible to place the blame for the failure to meet on either or both of the parties. Although the letters written by Auto Fast's attorney could lead to an opposite conclusion, the Board's determination of this matter is based on substantial evidence.

■ Auto Fast contends in addition that its unilateral action was justified by its confusion over which branch of the union to bargain with. Auto Fast argues that it was notified by the Western Conference of Teamsters that only the Teamsters National Freight Industry Negotiating Committee was authorized to represent the union, while at the same time it was told by Local 396 to negotiate with that local. However, the record does not demonstrate any confusion on Auto Fast's part. The company's efforts to communicate with the union during the late 1981 to early 1982 period were all directed to the Western Conference. In addition, Auto Fast's attorney testified that despite the local's assertions, "[w]e took direction from the western conference and felt that we should meet only with the western conference of Teamsters...." Although, as the Board stated, the different branches of the union may not have been well coordinated, and possibly were uncertain of their responsibilities, there is ample support for the Board's determination that any confusion experienced by Auto Fast was insufficient to excuse its failure to bargain with *any* branch of the union prior to taking unilateral action.

■ Auto Fast also argues that decertification petitions filed in April, 1982 with respect to the three locals cast doubt upon the authority of the union to bargain for the employees. However, according to Auto Fast, these petitions were filed on April 6, 1982, one day *after* the company's unilateral actions. The petitions thus could not have caused the confusion which allegedly made it impossible to negotiate with the union during the time leading up to the company's unilateral actions. *See NLRB v. Carmichael Construction Co.,* 728 F.2d 1137, 1140 n. 2 (8th Cir.1984). Moreover, an employer may not use the filing of a decertification petition in the context of unfair labor practices as a defense to a refusal to bargain charge. *NLRB v. Mar-Len Cabinets, Inc.,* 659 F.2d 995, 999 (9th Cir.1981). The decertification petitions here were filed a day after Auto Fast unilaterally implemented changes to its wage and benefits packages, and several days after it constructively discharged two of its employees because of their union activities. *See infra,* Part II. Having thus unlawfully undermined the union, it would be inequitable to allow Auto Fast to assert now that the uncertainty for which it was in large part responsible should excuse it from its collective bargaining duties. *See Clear Pine Mouldings,* 632 F.2d at 730. These factors distinguish the instant case from *Ellex Transportation, Inc.,* 217 N.L.R.B. 750 (1975), which involved a decertification petition filed *before* the employer's unilateral action. Indeed, *Ellex Transportation* expressly recognized that a question as to representation will excuse an employer from bargaining only where that employer " 'has engaged in no antecedent unfair labor practice.' " *Id.* at 758 (quoting *National Carbon Division, Union Carbide and Carbon Corp.,* 105 N.L.R.B. 441, 442–43 (1953). Auto Fast, as noted above, does not meet this criterion.

■ The other cases relied upon by Auto Fast do not alter this conclusion. *NLRB v. Cone Mills Corp.,* 373 F.2d 595 (4th Cir.1967) held only " 'that there might

be circumstances which the Board could or should accept as excusing or justifying unilateral action.' " *Id.* at 599 (quoting *NLRB v. Katz,* 369 U.S. at 748, 82 S.Ct. at 1114). Auto Fast would read *Cone Mills* for the proposition that unilateral action is justified whenever a union has a "reasonable opportunity" to bargain over the unilateral change. This contention is essentially a reiteration of its charge that the union was avoiding the bargaining table even though it had the "opportunity" to negotiate with Auto Fast. We have already disposed of this contention, finding substantial evidence to support the Board's conclusion that the union was not intentionally avoiding negotiations. Moreover, wholly apart from the issue of the union's willingness to bargain, Auto Fast never provided the union with the "opportunity to bargain" that was present in *Cone Mills.* To come within the narrow exception to the bargain to impasse rule, an employer must give the union detailed advance notice of the proposed changes, prior to unilateral implementation. *Stone Boat Yard,* 715 F.2d at 444; *M & M Building & Electrical Contractors,* 262 N.L.R.B. at 1472. Here, it is undisputed that Auto Fast failed to present its proposed changes to the contract to the union prior to implementing them. Thus, even if the union had been avoiding the bargaining table, Auto Fast has failed to satisfy a basic pre-condition for excusing it from the duty to bargain. *Stone Boat Yard,* 715 F.2d at 444–45.

For these same reasons, *AAA Motor Lines, Inc.,* 215 N.L.R.B. 793 (1974), does not support Auto Fast's position. There, the Board excused an employer's unilateral action where the union was "insistent on not meeting" with the employer, and where the union had received the employer's proposals for a new contract two and one-half months prior to the expiration of the collective bargaining agreement. 215 N.L.R.B. at 794. By contrast, Auto Fast did not provide the union with its contract proposals before implementing them. Moreover, we have already decided that substantial evidence supports the Board's conclusion that the union was not intentionally avoid-

ing bargaining, and that the "urgency" of implementing changes was not as great as Auto Fast suggests. The *AAA Motor Lines* case found unilateral action to be justified only in a narrow set of circumstances, which are simply not present in the instant case.

## II. Constructive Discharge of Sloan and Garza

Section 8(a)(3) of the NLRA makes it an unfair labor practice for an employer to discriminate with respect to "tenure of employment or any term or condition of employment" so as to "discourage membership in any labor organization...." An employer violates this provision when it creates "working conditions so intolerable that an employee is forced to resign," and it appears that the employer "acted to encourage or discourage membership in [a] labor organization." *NLRB v. Haberman Construction Co.,* 641 F.2d 351, 358 (5th Cir.1981) (en banc). *See NLRB v. Holly Bra of California, Inc.,* 405 F.2d 870, 872 (9th Cir.1969). Auto Fast's argument is essentially that the Board should have believed the testimony of Auto Fast's manager, John Traina, who testified that Sloan and Garza voluntarily resigned from their employment, choosing not to work under the expired collective bargaining agreement. However, there was substantial evidence, in the form of the testimony of Sloan and Garza, to the effect that the two employees were informed that they would have to choose between continued employment and the continued exercise of the right to belong to a union. 272 N.L.R.B. at 562. When the employees refused to relinquish their union membership, they were constructively discharged, according to the Board's findings. The Board expressly credited the testimony of the employees, and found that Traina was not a convincing witness. *Id.* at 563. Auto Fast has not demonstrated that such factual findings are "inherently incredible or patently unreasonable." *Photo-Sonics, Inc. v. NLRB,* 678 F.2d 121, 123 (9th Cir.1982) (quoting *NLRB v. Anthony Co.,* 557 F.2d 692, 695

(9th Cir.1977)). Substantial evidence thus supports the Board's determination that Sloan and Garza were constructively discharged because of their desire to remain in the union, in violation of sections 8(a)(3) and (1) of the NLRA.

In sum, substantial evidence supports the decision and order of the Board. The Board's petition for enforcement is therefore GRANTED, and Auto Fast's request for review is DENIED.