**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PINKSTON–HOLLAR CONSTRUCTION SERVICES, INC. d/b/a Construction Services, Inc., Respondent.**

No. 90–4483.

United States Court of Appeals, Fifth Circuit.

Feb. 27, 1992.

Michael Dunn, Director, Region 23, Ft. Worth, Tex., for other interested parties.

Ted B. Kuhn, Buttvill & Kuhn, Houston, Tex., for Local 116.

Before POLITZ, Chief Judge, JOHNSON, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Respondent-appellant Pinkston–Hollar Construction Services, Inc. (the Company) petitions for review of a decision of the National Labor Relations Board (the Board), which held that the Company violated section 8(a)(1) and 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), (5), by unilaterally withdrawing from Union benefit plans and implementing its own benefit plans. The Board has filed a cross-application for enforcement of its order. Because the Board failed to evaluate the parties' conduct under the correct legal standard, we reverse the Board's decision and remand the case to the Board for further consideration.

### Facts and Procedural History

Since approximately 1980, the Company had a bargaining relationship with the United Union of Roofers, Waterproofers and Allied Workers Local Union No. 116 (the Union). On January 13, 1987, the Company was a party to a collective bargaining agreement entered into on behalf of the Company and other roofing and waterproofing contractors by the Houston Roofing and Waterproofing Contractors Association on April 23, 1984. That agreement was due to expire on March 31, 1987.

By way of a letter dated January 13,[1] the Company informed the Union of its intention to withdraw from the employer association and to open the collective bargaining agreement for modification or termination upon expiration in March. The parties held approximately ten negotiating sessions be-

John D. Burgoyne, Aileen A. Armstrong, Deputy Assoc. Gen. Counsel, N.L.R.B., Washington, D.C., Margaret Bezou, Linda Dreehen, for petitioner.

David M. Thomas, Neil Martin, Fulbright & Jaworski, Houston, Tex., for respondent.

1. Unless otherwise indicated, all dates are in 1987.

tween March and August with Company Vice–President Bill Ferem (Ferem) usually representing the Company and Union Business Agent Robert Banks (Banks) representing the Union. No attorneys were present during these sessions.

At a meeting held on March 30, the subject of the Company's continued participation in the Union Trust Funds (which included a Welfare Trust Fund, Vacation Trust Fund, Pension Plan and Apprentice Trust Plan) first surfaced. Ferem then requested the Union to provide the Company with a copy of the Union pension plan's Statement of Financial Condition, Form 5500. By letter dated April 9, the Company informed the Union that it was considering proposing a new benefits package and sought information on the Union plans then in effect. Not having received the requested information, the Company issued its first written proposed contract, dated April 24th, which provided for Benefits and Funds "to be negotiated"; no specifics of any proposed plan were included.

On July 22, following further negotiations and still not having received the requested financial information from the Union despite repeated requests, the Company informed the Union that it intended to cease participation in the Union Plans, effective September 1, and instead "utilize its own group health plan, profit sharing plan, and vacation plan for its employees." The letter invited the Union to meet and bargain over the Company's cessation of participation. On July 30, the Union informed the Company of its desire to bargain, and offered three dates in August on which it would be available to negotiate over the matter.

The first meeting following the Company's announcement of impending withdrawal from the Union plans was held August 14. However, no bargaining on the proposed benefits changes took place; instead, the Union tried, as it had in previous sessions, to convince the Company to extend the expired collective bargaining agreement for a year or to sign an agreement similar to the prior agreement with some modifications. The parties then agreed to

meet again on August 20. By way of a certified letter, received by the Union on August 18, the Company confirmed the agreement to meet on the 20th, and informed the Union that the Company's attorney would attend all future negotiating sessions. Again, no bargaining occurred at the August 20 meeting.

Both parties agree that the events during the August 20 meeting are significant to the determination of this case; however, the facts are disputed. Finding that Banks appeared "uncertain and hesitant during his testimony," the Administrative Law Judge (ALJ) credited the Company's scenario of the meeting, which outlined the following sequence of events. Upon his arrival at the meeting, Banks told the Company that the Union's attorney was out of town on business and the Union was not prepared to bargain without him. Banks indicated that the Union's attorney would be available in mid-September to meet. The Company stated that it still intended to implement the changes on September 1; Banks' sole response was an acknowledgment that he would inform the Union's attorney. The Union did not at that time request the Company to postpone implementation, nor did the Union schedule another bargaining session prior to September 1. Moreover, the Union at no time requested specific information on the Company's proposed changes.

The Company ceased payment into the Union plans on September 1. However, the parties continued to schedule meetings. The next meeting was held September 23, at which time the Union's attorney was present and the parties discussed the broad spectrum of the contract. When the focus turned to the Company's discontinued participation in the Union's benefit programs, the Union declined to bargain and asserted that it believed the Company's unilateral implementation of the new plans to have been an unfair labor practice. The Company denied the allegation and expressed continued willingness to meet and bargain. On November 16, the Union's attorney announced that the Union would no longer negotiate until it was resolved whether the Company's withdrawal from the Union

plans constituted an unfair labor practice. The Company agreed to suspend negotiations.

On November 20, the Union filed an unfair labor practice charge with the Board. The Regional Director of the Board initially refused to issue the complaint. However, the Union's appeal was sustained by the Board's General Counsel and on April 20, 1988, the complaint issued. On June 21, 1988, a hearing was held before an ALJ, who found no violation of the Act and dismissed the complaint. In his decision issued June 22, 1989, the ALJ observed:

"These facts present the rare situation where the Union has waived its bargaining rights because of its failure to act with due diligence. Initially it is not clear when, if ever, the Union had even suggested to the Company that it postpone or cancel its decision, including the implementation of its own benefit plans. Indeed, the record shows the contrary, namely, that Banks had never formally demanded that the Company refrain from effectuating its announced intentions pending bargaining with the Union. The Union's failure to do so may not have been the 'green light' for the [Company] to implement the proposal on September 1, 1987, after it gave the Union notice by letter of July 22, 1987, but it certainly made it easier for the [Company] to act unilaterally. Considering the bargaining process in its entirety, *I find that the Union's performance in this regard appeared superficial and indifferent,* particularly since there is no evidence that the [Company] employed dilatory methods to avoid bargaining over this issue; to the contrary, the [Company] was prepared on August 20, 1987, to meet and bargain with the Union, but Banks declined because he did not have his attorney. Moreover, there is also no suggestion that the [Company] was motivated by discriminatory reasons to cease its participation in the union-sponsored benefits programs. The evidence suggests that the Company implemented its own programs for economic reasons. Finally, instead of attempting to bargain about the issue with the [Company] even

after it had implemented its own plans on September 1, the Union merely informed the [Company] that it would file charges with the Board" (emphasis added).

Based on this set of facts, the ALJ determined that the Union failed to act with due diligence and thereby waived its bargaining rights.

The General Counsel then filed an exception, and the Board issued a decision and order on March 30, 1990, reversing the ALJ, and concluding that the Company violated sections 8(a)(1) and (5) of the Act by unilaterally discontinuing payments into the Union's funds and unilaterally implementing its own plans. In reversing the ALJ's decision, the Board determined that the ALJ's "due diligence" standard was incorrect, and stated instead that a "union may relinquish a statutory right during contract negotiations, however, only by clear and unmistakable waiver." Accepting the facts as found by the ALJ, the Board nevertheless concluded that the Union's actions did not establish such a waiver of its statutory bargaining rights. The order now challenged by the Company and sought to be enforced by the Board requires the Company to cease unfair labor practices; to pay into the Union funds any monies due since September 1, 1987; and to make unit employees whole for losses incurred as a result of the Company's failure to make the payments.

### Discussion

#### I.

■ The Board's findings must be upheld if supported by substantial evidence in the record considered as a whole, not just evidence supporting the Board's findings. *N.L.R.B. v. Brookshire Grocery Co.,* 919 F.2d 359, 362 (5th Cir.1990). We continue to apply the substantial evidence standard even though the ALJ and the Board have come to different conclusions. *Merchants Truck Line, Inc. v. N.L.R.B.,* 577 F.2d 1011, 1014 (5th Cir.1978). However, " '[w]hen the ... Board does not accept the findings of the [ALJ], the Court of Appeals has an obligation to examine the evidence

and findings of the Board more critically than it would if the Board and the ALJ were in agreement.'" *Brookshire Grocery,* 919 F.2d at 362 (quoting *N.L.R.B. v. Florida Medical Center, Inc.,* 576 F.2d 666, 674 (5th Cir.1978)). Moreover, we have not hesitated to deny enforcement of an order of the Board where the Board applied an incorrect standard in determining an employer's compliance with its bargaining obligation. *See Nabors Trailers, Inc. v. N.L.R.B.,* 910 F.2d 268, 273 (5th Cir.1990), *cert. granted sub nom. N.L.R.B. v. Nabors Trailers, Inc.,* —— U.S. ——, 111 S.Ct. 1680, 114 L.Ed.2d 76 (1991), *cert. dismissed pursuant to Rule 46,* —— U.S. ——, 112 S.Ct. 8, —— L.Ed.2d —— (1992).

## II.

■ Sections 8(a)(5) and (1) of the Act oblige an employer to notify and consult with the Union concerning changes in wages, hours and conditions of employment. *N.L.R.B. v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). The fact that the collective bargaining agreement in this case expired on March 31, 1987 does not pretermit our analysis because pension, health and welfare plans are considered terms and conditions of employment that survive expiration of the agreement. *Harold W. Hinson, d/b/a/ Hen House Market No. 3,* 175 N.L.R.B. 596 (1969), *enforced sub nom., Hinson v. N.L.R.B.,* 428 F.2d 133, 136–37 (8th Cir. 1970). The employer's duty to bargain is defined by section 8(d) of the Act as part of a mutual duty between the employer and the union to "meet . . . and confer in good faith with respect to wages, hours, and other terms and conditions of employment. . . ." 29 U.S.C. § 158(d). However, the presence of good faith alone does not suffice; an employer's "refusal to negotiate *in fact* as to any subject within § 8(d),

and about which the union seeks to negotiate, violates § 8(a)(5) even though the employer has every desire to reach agreement with the union upon an over-all collective agreement and earnestly and in good faith bargains to that end." *Katz,* 82 S.Ct. at 1111. Similarly, an employer's unilateral change in conditions of employment under negotiation is a violation of section 8(a)(5) because it is tantamount to a flat refusal to bargain. *Id.*

■ Conversely, when an employer notifies a union of proposed changes in terms and conditions of employment, it is incumbent upon the union to act with due diligence in requesting bargaining. *Kentron of Hawaii,* 214 N.L.R.B. 834 (1974). Any less diligence amounts to a waiver by the bargaining representative of its right to bargain. *Jim Walter Resources,* 289 N.L.R.B. No. 163, 129 LRRM 1091, 1093 (1988). It is undisputed in this case that the Company notified the Union of its proposed changes several weeks in advance of its desired implementation date. The Union promptly responded, and stated that it desired to bargain.

The issue before this Court is whether the Board applied the proper legal standard in determining whether the Union's reluctance to bargain respecting the benefit plans excused the Company's unilateral implementation of changes in that regard. Although the Board's prior opinions contain some language indicating a duty on the part of the Union to pursue bargaining with due diligence,[2] the Board now seeks to draw a sharp distinction between the duty to request bargaining, for which the Board would impose the due diligence standard, and the pursuit of bargaining, for which the Board would impose a presumption that the Union has met its obligations absent evidence of a clear and unmistakable waiver.[3]

---

**2.** *See, e.g., Salem College,* 261 N.L.R.B. 327, 337 (1982) ("A union that has had notice of an employer's proposed change in a term or condition of employment must timely request and *diligently pursue bargaining* if it wishes to preserve its right to bargain on that subject."); *Kentron of Hawaii,* 214 N.L.R.B. 834 (1974) (holding that, "[i]n view of the Union's lack of

*diligence in enforcing* its representational rights," the employer did not commit an unfair labor practice by unilaterally implementing changes) (emphasis added).

**3.** The cases relied on by the Board for this proposition are inapposite. For example, the Board cited *Communication Workers of Amer-*

■ The law is well settled that once an impasse in negotiations is reached, the employer is free to implement changes unilaterally so long as the changes have been previously offered to the union during bargaining. *Huck Mfg. Co. v. N.L.R.B.*, 693 F.2d 1176, 1186 (5th Cir.1982). However, because the Company concedes that no impasse was reached in the negotiations, the ALJ and the Board considered only whether the Union, prior to the Company's implementation of the new plans on September 1, waived its right to postpone such implementation pending bargaining to agreement or impasse. On the facts before it, as found by the ALJ, the Board concluded that the Union's unwillingness to bargain on two occasions did not amount to such deliberate stalling as to constitute waiver under the more stringent "clear and unmistakable intent" standard. And the ALJ conceded that "the Union did not consciously plan to waive its bargaining rights."

Short of waiver, some courts have recognized a narrow exception to the bargain to impasse rule: where, upon expiration of a collective bargaining agreement, the union has avoided or delayed bargaining, and the employer has given notice to the union of the specific proposals the employer intends to implement, the employer may unilaterally implement the proposals without first bargaining to impasse. *See, e.g., N.L.R.B. v. Auto Fast Freight, Inc.*, 793 F.2d 1126, 1129 (9th Cir.1986).

■ Similarly, the law in this Circuit is that unilateral implementation of changes in such a setting is not a violation of the duty to bargain collectively, even in the absence of an impasse, if the employer notifies the union that it intends to institute the change and gives the union the opportunity to respond to that notice. *Nabors Trailers*, 910 F.2d at 273.[4] *Nabors Trail-*

---

*ica, Etc. v. N.L.R.B.*, 644 F.2d 923, 927–28 (1st Cir.1981). In that case, however, the court held only that the union was entitled to requested grievance-related materials. There, the court rejected the company's "waiver" defense, which was predicated on the union abandoning its request for information as a result of failing to include the request in the resulting agreement. Thus, the company was arguing for permanent, contractual waiver of a certain statutory right; here, in contrast, the Company argues only that the Union's lack of due diligence permitted the Company to unilaterally implement changes during bargaining. Similarly, the cases cited to this Court concern whether a collective bargaining agreement provision expressly (and permanently) contractually waives a union's statutory right to bargain over a term and condition of employment. *See Metropolitan Edison Co. v. N.L.R.B.*, 460 U.S. 693, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983) (refusing to infer waiver from a general contractual provision); *International Brotherhood of Teamsters v. Southwest Airlines*, 875 F.2d 1129, 1135 (5th Cir.1989) (en banc), (recognizing that a contractual waiver of a statutory right must be clear and unmistakably expressed), *cert. denied*, 493 U.S. 1043, 110 S.Ct. 838, 107 L.Ed.2d 834 (1990); *IBEW Local Union 1395 v. N.L.R.B.*, 797 F.2d 1027, 1029 (D.C.Cir.1986) (same). None of the cases relied on by the Board deal with the situation in which the Union initially requests bargaining, and then stalls negotiations beyond the point at which it knows the Company has proposed implementation.

**4.** The Board argues that the Company's failure to provide a specific proposal in its notice to the union prevents assertion of this defense here.

There is nothing to indicate that the Union ever requested, or complained of the absence of, such information. To the extent the Board is asserting a deficiency in the Company's notice, we will not address this contention for the first time on appeal. Neither the ALJ nor the Board below found the Company's notice in any way deficient for purposes of initiating the bargaining process.

The Board also appears to argue, consistent with the Ninth Circuit's opinion in *Auto Fast Freight, supra,* that a detailed proposal is a condition precedent to a waiver-by-inaction defense. In support, the Board cites our opinion in *N.L.R.B. v. Crystal Springs Shirt Corp.*, 637 F.2d 399, 402 (5th Cir.1981), where we recognized that an employer may not satisfy its notice obligation by giving general information from which the Union is to infer that a change has occurred. We find that case to be inapposite. Here, the Company gave explicit notice that it intended to discontinue the Union plans and implement its own plans. (In that regard, the Company requested information on the Union plans, which the Union never supplied; on the other hand, the Union never requested more specific information.) By contrast, in *Crystal Springs* the employer merely provided the union with certain information relating to compensation rates from which the union was to infer a change. Moreover, the Ninth Circuit's cases do not suggest a different result on these facts. In both *Auto Fast Freight, supra,* and its precursor, *Stone Boat Yard v. N.L.R.B.*, 715 F.2d 441, 444 (9th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984), the employer gave no indication whatsoever of the content of

*ers* relied on a long line of precedent, beginning with *National Labor Relations Board v. Citizens Hotel Co.*, 326 F.2d 501, 505 (5th Cir.1964), where the court explained:

> "It is true, of course, ... that an employer may make changes without the approval of the union as the bargaining agent. The union has no absolute veto power under the Act. Nor do negotiations necessarily have to exhaust themselves to the point of so-called impasse. But there must be discussion prior to the time the change is initiated. An employer must at least inform the union of its proposed actions under circumstances which afford a reasonable opportunity for counter arguments or proposals."

Thus, *Nabors Trailers* and *Citizens Hotel* indicate that, at least in this Circuit, something less than absolute waiver of the right to bargain permits an employer in a setting such as this to unilaterally implement changes even in the absence of impasse. As the Company acknowledges:

> "The Company does not argue that the Union has waived forever its right to bargain in the future concerning the Company's renewed participation in the Trust Funds. The Company claims only that, by failure to diligently pursue bargaining prior to implementation of the Company's proposal, the Union waived its right to complain about the Company's implementation of the proposal on September 1."

This claim is supported by the Company's willingness to meet and bargain on September 23.

---

its desired changes, but, at most, that "substantial changes" were desired.

5. The Company offers a possible motive behind the Union's reluctance to bargain: the contract between the Union and the multi-employer association contained a "Most Favored Nation" clause. That clause operated so that if the Company negotiated for itself more favorable terms than in the multi-employer agreement, the Union would be bound to allow the other employers to obtain the same terms. Therefore, the Union had incentive to protect the multi-employer agreement by avoiding bargaining. Although we note the existence of this clause in the agreement, we decline to impute any such motive to the Union because neither the ALJ nor the Board discussed this point below.

In *Nabors Trailers*, we faced quite similar facts to those now before us. There, the employer and the union met several times and were unable to agree on terms. The employer finally implemented the change unilaterally, which precipitated unfair labor practice charges filed by the union. We reversed the Board's decision, which held that the employer breached its bargaining duty because no impasse had been reached, and remanded for reevaluation in light of the less-than-impasse standard enunciated in *Citizens Hotel. Id.* at 273.

In this case, the Company, having previously broached the subject in March and April, notified the Union on July 20 of its intention to implement its own benefits package effective September 1. The parties met on August 14, but the Union was prepared to discuss only extension of the collective bargaining agreement (action which the Board now terms the Union's "bargaining tactic"). A second meeting was held on August 20, but the Union refused to bargain, claiming that its attorney was busy and unable to attend.[5] No new meeting was held until September 23, when again the Union refused to bargain, but instead informed the Company that it intended to bring charges of unfair labor practices because the Company unilaterally implemented the changes on September 1.

In light of these facts found by the ALJ and undisputed by the Board, we conclude that this case fits squarely within the dictates of *Nabors Trailers*.[6] We are bound

---

6. The Supreme Court's recent decision in *Litton Financial Printing v. N.L.R.B.*, —— U.S. ——, 111 S.Ct. 2215, 2221, 115 L.Ed.2d 177 (1991), does not mandate a contrary result. There, the Court recognized the general principle, derived from *Katz, supra,* that an employer commits an unfair labor practice if, after contract expiration, it effects a unilateral change without bargaining to impasse. *Litton,* however, did not concern the situation where a company notified a union of a proposed change and offered the union the opportunity to bargain; rather, the review in *Litton* was limited to the question of arbitrability of post-contract expiration layoffs. The Court declined to extend the unilateral change doctrine to impose a duty to arbitrate postexpiration disputes. *Id.* 111 S.Ct. at 2222–23. Ac-

by that decision to follow the standard enunciated therein.

### Conclusion

For the reasons stated, we remand this case to the Board for reevaluation consistent with the "notice and opportunity to bargain" standard recently reaffirmed in *Nabors Trailers, supra. See also Winn–Dixie Stores, Inc. v. NLRB,* 567 F.2d 1343, 1349 (5th Cir.1978), *reh'g denied,* 575 F.2d 1107. The Board's application for enforcement of its order is accordingly denied.

REVERSED and REMANDED; ENFORCEMENT DENIED.

cordingly, *Litton* did not, expressly or impliedly, overrule the numerous circuit court decisions, including *Nabors Trailers,* that have recognized that some form of waiver will also excuse postexpiration unilateral implementation, even short of impasse.