**Charles LANGONE, Fund Manager of the New England Teamsters and Trucking Industry Pension Fund, Plaintiff,**

v.

**RUSSO BROTHERS, INC., Defendant.**

**Civil Action No. 93–11801–NG.**

United States District Court,
D. Massachusetts.

Sept. 3, 1996.

Christopher N. Souris, Feinberg, Charnas & Birmingham, Boston, MA, for Plaintiff.

Joseph P. Bernardo, Shapiro, Israel & Weiner, Boston, MA, Joseph B. Burns, Hoberman, McGuigan, Freidman, McNamara & Ruberto, P.C., Hartford, CT, for Defendant.

## MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOCKET ENTRY # 31)

BOWLER, United States Magistrate Judge.

Pending before this court is a motion for partial summary judgment filed by plaintiff Charles Langone ("Langone"), Fund Manager of the New England Teamsters and Trucking Industry and Pension Fund ("the pension fund"). (Docket Entry # 31). Defendant Russo Brothers, Inc. ("Russo"), a Connecticut corporation with a usual place of business in Hartford, Connecticut, opposes summary judgment. The parties consented to trial before this court in accordance with 28 U.S.C. § 636(c). After conducting a hearing on the motion for summary judgment, this court took the motion (Docket Entry # 31) under advisement. (Docket Entry # 41).

### PROCEDURAL BACKGROUND

In January 1994 Langone filed an amended complaint seeking to recover Russo's unpaid contributions to the pension fund. Count I of the two count amended complaint seeks recovery of unpaid contributions for the period from January 1986 to December 1991. Count II alleges Russo's liability for unpaid contributions to the pension fund from May 1993 to the present. Count II additionally alleges that Russo failed to make late payments totaling $231.10. Langone bases liability with respect to both counts on violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA").

Langone moves for summary judgment on Count II except for the allegation involving unpaid late charges. Russo ceased its pension fund contributions in April 1993, after the March 31, 1993 expiration of the related collective bargaining agreement. The pension fund terminated Russo as a contributing employer to the pension fund effective December 1, 1993. Accordingly, Langone requests that Russo be ordered to pay the unpaid contributions to the pension fund for the period from May 1993 through November 30, 1993, as prayed for in Count II of the amended complaint. Langone acknowledges that there are factual issues as to whether or not an impasse was reached between Russo and Teamsters Local 559 in connection with negotiating the terms of a new collective bargaining agreement.

### FACTUAL BACKGROUND

Russo concurs and elaborates upon Langone's statement of facts. For purposes of summary judgment, this court finds the following facts.

The pension fund is a trust fund established under an Agreement and Declaration of Trust dated April 11, 1958 ("the trust agreement"). Various employers and labor unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America entered into the trust agreement for the stated purpose of establishing a pension fund and prescribing the contributions and payments thereto.

On August 2, 1982, the trust agreement was restated and reprinted. Langone avers that the restated trust agreement was in effect from August 2, 1982 through January 25, 1994. Michael J. Russo, as President of Russo, signed a document dated August 1, 1990, agreeing to be bound by the restated

trust agreement.[1] (Docket Entry # 35, Ex. 3).

Similarly, under the terms of a collective bargaining agreement entered into by Russo and certain labor unions, including Teamsters Local 559, Russo accepted the trust agreement. (Docket Entry # 35, Ex. 2, Article XV(2)). Michael J. Russo signed the collective bargaining agreement on behalf of Russo. The collective bargaining agreement was in effect from May 1, 1990 through March 31, 1993.

In sum, Russo was bound to abide by the terms of the trust agreement as well as the terms of the collective bargaining agreement.

Section one of article V of the trust agreement obligates employers such as Russo to "contribute to the pension fund the amount required by the Collective Bargaining Agreement between the Local Union and the Employer." Section one further dictates that, "The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments." (Docket Entry # 35, Ex. 1).

Section two of article V, entitled Effective Date of Contributions, establishes the pertinent dates wherein an employer is required to make contributions to the pension fund. This section of the trust agreement provides that the "contributions shall be made as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is obligated pursuant to the Collective Bargaining Agreement with the Local Union or until he ceases to be an Employer within the meaning of this Trust Agreement."

In March 1986 the Board of Trustees of the New England Teamsters and Trucking Industry Pension Fund amended section two of article V of the trust agreement to add the following language:

In addition to all sums due to the Fund by an Employer under the terms of the applicable Collective Bargaining agreement, as aforesaid, An Employer shall also be obligated to contribute to the Fund, all sums due as a result of a legal duty established and provided by applicable labor-management relations law, including 29 U.S.C. (sic) 158(a)(5).

(Docket Entry # 35, Ex. 1).

The collective bargaining agreement sets forth the specific contribution obligations of an employer such as Russo. In particular, articles XIV and XV of the collective bargaining agreement obligate the employer to contribute to the employee Health Services and Insurance Plan ("the health and welfare fund") and to the pension fund. Under the provisions of article XV of the collective bargaining agreement and the Standard Participation Agreement signed by Michael J. Russo for Russo, the rate of contributions to the pension fund for each hour of work was as follows: (1) $2.06 for the period from May 1, 1990 to May 5, 1991; (2) $2.16 for the period from May 5, 1991 to May 4, 1992; and (3) $2.26 for the period from May 4, 1992 to March 31, 1993. Section four of article XV of the collective bargaining agreement also gave "the Trustees" the option to conduct an audit of Russo's contributions to the pension fund. (Docket Entry # 35, Ex. 2 & 4).

Russo has been a signatory to collective bargaining agreements with Teamsters Local 559 for more than a decade. According to Francis D. Russo ("Francis Russo"), the collective bargaining agreements are reinstituted every three years. Ordinarily, parties other than Russo negotiate the collective bargaining agreement which is thereafter presented to Russo for signing. Shortly before the expiration of the three year period, Russo typically is asked to sign a document wherein Russo agrees to sign the final, negotiated agreement.

On January 1, 1993, Russo received a notice with respect to the March 31, 1993 expiration of the collective bargaining agreement. Thereafter and prior to the March 31, 1993 expiration, Francis Russo, Michael J. Russo ("the Russos") and Robert Bell ("Bell"), a representative of Teamsters Local 559, met

---

1. For present purposes, this court refers to the original and the restated trust agreement collectively as "the trust agreement."

to discuss and negotiate the terms of a successor collective bargaining agreement. According to Francis Russo, Bell wanted Russo to sign an interim agreement committing the company to the final agreement. Francis Russo further testified that Bell described the commitment as agreeing to the terms of the existing collective bargaining agreement and to three pages of a "wish list."[2] Bell indicated that Russo would only be bound by the terms of the final agreement. Francis Russo was unwilling to sign an interim agreement, in part, because he did not know the terms of the final agreement. (Docket Entry # 36, Ex. 3; Docket Entry # 40, Ex. 1).

Francis Russo also informed Bell that Russo would need a number of concessions in order to stay competitive and that "the benefits were too high." Francis Russo testified that he advised Bell that the existing collective bargaining agreement was too expensive.[3] In particular, Francis Russo told Bell that Russo could no longer afford to pay the existing $17.08 hourly wage rate and that the company "would be looking for a wage somewhere in the $12.50 an hour range." (Docket Entry # 36, Ex. 3; Docket Entry # 40, Ex. 1).

In response, according to Francis Russo, Bell said that he did not have the authority to change the document. Bell further explained that the union would not deviate from the terms of the final contract negotiated between the union and the large national trucking and construction companies, according to Francis Russo. As testified to by Francis Russo, Bell said that "none of that could be changed."[4] After additional discussion (Docket Entry # 40, Ex. 1, ¶ 7), the meeting ended. The Russos and Bell did not make a date to meet again. (Docket Entry # 36, Ex. 3; Docket Entry # 40, Ex. 1).

In or around the summer of 1994, the Russos received another letter from Bell.[5] According to Francis Russo, the second letter "looked like there was going to be room for negotiation." (Docket Entry # 36, Ex. 3).

In April 1993, after the March 31, 1993 expiration of the collective bargaining agreement, Russo discontinued its contributions to the pension fund. The company nevertheless continued to pay its employees an hourly wage of $17.08. It also initially suspended but, after approximately two months, reinstated its contributions to the health and welfare fund.

By letter dated November 30, 1993, Langone advised Russo that the Board of Trustees of the pension fund had terminated Russo as a contributing employer to the pension fund due to its failure to make contributions. (Docket Entry # 35, Ex. 5). Coleen Barrett–Holland, a payroll auditor for the pension fund, reviewed Russo's payroll records and thereafter submitted an affidavit in January 1995. Based on her review, she concluded that Russo owed the pension fund $13,514.24 in unpaid contributions and $1,825.09 in overdue interest as of January 1995 for the period of May 1993 through November 1993. In contrast, Francis Russo avers that as of February 1995, Russo owed only $12,694.42 in unpaid pension contributions and an additional $1,620.65 in interest for the period of May 1993 through November 1993. (Docket Entry # 34; Docket Entry # 40, Ex. 1).

### DISCUSSION

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

2. This court does not consider Francis Russo's recitation of what Bell said at the meeting for the truth of the matter asserted. Rather, this court considers the recitation for the purpose of evaluating the status of the bargaining negotiations, if any.

3. When asked at his deposition to explain what portion of the existing agreement was too expensive, Francis Russo replied that the entire package of costs was too expensive including the wages, the pension and the health benefits.

4. Again, this court does not consider the testimony of what Bell said, as told by Francis Russo, for the truth of the matter asserted.

5. According to Francis Russo, he did not discuss the collective bargaining agreement with Bell between the meeting in early spring of 1993 and the summer of 1994.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corporation*, 63 F.3d 32, 36–37 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996) (quoting Rule 56, Fed.R.Civ.P.). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). Likewise, "'material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Smith v. F.W. Morse & Company, Inc.*, 76 F.3d 413, 428 (1st Cir.1996).

Throughout his pleadings, Langone relies on the remedies provided for in section 502(g)(2) of ERISA. 29 U.S.C. § 1132(g)(2). ERISA expressly limits such remedies to actions by fiduciaries to recover unpaid contributions in violation of section 515, 29 U.S.C. § 1145. 29 U.S.C. § 1132(g)(2). In turn, section 502(a)(3) provides a cause of action to a fiduciary "to enjoin any act or practice which violates any provision of this subchapter," i.e., section 1145. 29 U.S.C. § 1132(a)(3). *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Company, Inc.*, 484 U.S. 539, 547, 108 S.Ct. 830, 835, 98 L.Ed.2d 936 (1988) ("liability created by § 515 may be enforced ... by bringing an action in federal district court pursuant to § 502"); *New Bedford Fishermen's Welfare Fund v. Baltic Enterprises, Inc.*, 813 F.2d 503, 505 (1st Cir.1987) (section 1132(a)(3) authorizes fund to collect unpaid contributions under section 515). To state the obvious, therefore, Langone brings counts I and II of the amended complaint as a fiduciary against

Russo for unpaid contributions to the pension fund in violation of section 515 of ERISA, 29 U.S.C. § 1145. As previously explained, Langone limits his summary judgment motion to Russo's liability under Count II to recover the unpaid contributions for the period from May 1993 through November 30, 1993.[6]

Section 515 provides that:

Every employer who is *obligated* to make contributions to a *multiemployer plan* under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with *the terms and conditions of such plan or such agreement.*

29 U.S.C. § 1145. The parties stipulated that Langone is a fiduciary within the meaning of section 502(a)(3), 29 U.S.C. § 1132(a)(3). (Docket Entry # 18). They further stipulated that the pension fund is a "multiemployer plan" within the meaning of section 3(37)(A), 29 U.S.C. § 1002(37)(A), as well as an "employee benefit plan" within the meaning of section 3(3), 29 U.S.C. § 1002(3). (Docket Entry # 18). Langone attests that the pension fund was established pursuant to the trust fund which documents thereby govern Russo's obligation to make contributions to the plan. It is also undisputed that Russo discontinued its payments to the pension fund after April 1993 and that the pension fund terminated Russo as a contributing employer effective December 1, 1993.

■ Section 515, 29 U.S.C. § 1145, obligates Russo as an employer to make contributions to the pension fund in accordance with either the terms of the pension fund, created and established pursuant to the trust agreement, or the terms of the collective bargaining agreement. Accordingly, the determinative issue for liability to arise under section 515, 29 U.S.C. § 1145, is whether as a matter of law Russo was "obligated to make contributions" under the terms of the trust

---

6. Langone terminated Russo as a contributing employer in the pension fund effective December 1, 1993. The parties do not appear to dispute that Russo was therefore no longer obligated under the terms of the plan or the terms of the expired collective bargaining agreement to make pension contributions beyond November 30, 1993, notwithstanding that Count II seeks unpaid contributions from May 1993 to the present.

agreement and/or the collective bargaining agreement.

Section one of article XV of the collective bargaining agreement, which explicitly applies to pension contributions, required Russo to commence contributions on May 1, 1990, and to continue such contributions "for the duration of the current collective bargaining Agreement between the Union and the Association, and any renewals or extensions thereof." The duration, however, only lasted until March 31, 1993. Hence, the terms of the collective bargaining agreement no longer required Russo to contribute to the pension fund after March 31, 1993, absent an extension or renewal of the agreement. Russo's liability, if any, under section 515, 29 U.S.C. § 1145, therefore arises under the terms and conditions of the trust agreement.

■ The trust agreement expressly and contractually obligates Russo "to contribute to the Fund, all sums due as a result of a legal duty established and provided by applicable labor-management relations law, including 29 U.S.C. [§ ] 158(a)(5)." [7] The trust agreement further mandated such contributions until Russo ceased to be a contributing employer within the meaning of the trust agreement, i.e., December 1, 1993. In all other areas, the trust agreement deferred to the collective bargaining agreement with respect to the rate and the requirements for making contributions to the pension fund.

Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(1) and (5), impose a statutory duty upon the employer to bargain in good faith with the employees' representative. *Rivera–Vega v. ConAgra, Inc.*, 70 F.3d 153, 158 (1st Cir.1995). An employer violates sections "8(a)(1) and (5) of the NLRA by unilaterally changing a condition of employment that is the subject of negotiations, or refusing to negotiate on a mandatory bargaining topic."

---

7. By inserting this provision into the trust agreement, Langone maintains, without objection from Russo, that Russo's obligation is contractual as opposed to statutory. Langone's assertion involves the subject matter jurisdiction of this court. Section 515 of ERISA does not encompass an employer's statutory duty to make postcontract contributions while negotiating the terms of a new contract. *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Company, Inc.*, 484 U.S. at 549 n. 16, 108 S.Ct. at 836 n. 16. Rather, the text and the history of sections 515 and 502(g)(2) of ERISA provide "firm support" for the conclusion "that this remedy is limited to the collection of 'promised contributions' and does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA." *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Company, Inc.*, 484 U.S. at 548, 108 S.Ct. at 835. As further explained by the Court, " § 515 provides only for a contractual origin for delinquency liability." *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Company, Inc.*, 484 U.S. at 549 n. 16, 108 S.Ct. at 836 n. 16. In addition, section "515 plainly refers to obligations that themselves arise from either a 'plan' or a 'collectively bargained agreement.'" *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Company, Inc.*, 484 U.S. at 549 n. 16, 108 S.Ct. at 836 n. 16.

It is also true that in the context of the concurrent jurisdiction of the National Labor Relations Board ("NLRB") to determine an unfair labor practice and the district courts to determine a breach of a collective bargaining agreement, the district court's jurisdiction is limited to assessing only bona fide claims of breach of a collective bargaining agreement. *See Newspaper Guild of Salem v. Ottaway Newspapers, Inc.*, 79 F.3d 1273, 1283–1284 (1st Cir.1996). Moreover, even in the case of bona fide contractual disputes, the district court may defer to the primary jurisdiction of the NLRB when faced with issues falling squarely within the primary jurisdiction of the NLRB such as whether the employer bargained in bad faith and unlawfully reached an impasse. *See Newspaper Guild of Salem v. Ottaway Newspapers, Inc.*, 79 F.3d at 1285.

In the case at bar, by inserting the obligation to comply with 29 U.S.C. § 158(a)(5) expressly into the trust agreement, Langone maintains that he properly invokes ERISA to determine Russo's obligation to contribute to the pension fund under the terms of the trust agreement notwithstanding the expiration of the collective bargaining agreement. Because this argument concerns the subject matter jurisdiction of this court, the parties should be prepared to address the issue of this court's subject matter jurisdiction under sections 502 and 515 of ERISA in light of *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Company, Inc.*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), at a status conference on October 2, 1996, at 10:15 a.m. In addition, at the status conference the parties should advise this court of the pendency or the existence of any administrative proceedings concerning the instant dispute.

*Rivera–Vega v. ConAgra, Inc.*, 70 F.3d at 161.

The " 'exception to this rule occurs when the negotiations reach an impasse.' " *Rivera–Vega v. ConAgra, Inc.*, 70 F.3d at 161 (citation omitted). An impasse exists only after good faith bargaining and where continued bargaining becomes futile because the parties are deadlocked. *Rivera–Vega v. ConAgra, Inc.*, 70 F.3d at 161. After bargaining in good faith to an impasse, an employer does not violate sections 8(a)(1) and (5) of the NLRA by instituting unilateral changes " 'that are reasonably comprehended within his pre-impasse proposals.' " *CJC Holdings, Inc. v. United Brotherhood of Carpenters and Joiners of America*, 1996 WL 142553 at * 11 (N.L.R.B. March 27, 1996) (citation omitted); *accord National Labor Relations Board v. Pinkston–Hollar Construction Services, Inc.*, 954 F.2d 306, 311 (5th Cir.1992) (once impasse is reached, employer may implement changes unilaterally if it previously offered such changes to union during bargaining). On the other hand, an employer does violate sections "8(a)(1) and (5) if, without having negotiated to impasse, it unilaterally changes its employees' terms and conditions of employment." *Rivera–Vega v. ConAgra, Inc.*, 70 F.3d at 162. Moreover, pension plans "are considered terms and conditions of employment that survive expiration of the [collective bargaining] agreement." *NLRB v. Pinkston–Hollar Construction Services, Inc.*, 954 F.2d 306, 310 (5th Cir.1992).

█ The NLRB only recognizes two exceptions to the bargain to impasse rule. "The first occurs 'when a union, in response to an employer's diligent and earnest efforts to engage in bargaining, insists on continually avoiding or delaying bargaining.' " *CJC Holdings, Inc. v. United Brotherhood of Carpenters and Joiners of America*, 1996 WL 142553 at * 11 (N.L.R.B. March 27, 1996) (citation omitted); *see also RBE Electronics of S.D., Inc., v. District Lodge No. 5. Inter-national Association of Machinists and Aerospace Workers*, 1995 WL 788575 at * 2 (N.L.R.B. December 18, 1995) (limited exception recognized where "union engages in tactics designed to delay bargaining"); *Tampa Sheet Metal Company, Inc. v. Sheet Metal Workers' International Association*, 1988 WL 213638 at * 5 (N.L.R.B. March 31, 1988) (absent impasse, employer may unilaterally implement changes diligently sought during bargaining if union has avoided or delayed in bargaining and employer provides union with notice). The second exception exists where " 'economic exigencies compel prompt action.' " *CJC Holdings, Inc. v. United Brotherhood of Carpenters and Joiners of America*, 1996 WL 142553 at * 11 (N.L.R.B. March 27, 1996) (citation omitted).

In the case at bar, Langone acknowledges that "whether or not impasse was reached is a controverted fact." (Docket Entry # 32, p. 9). Notwithstanding Langone's acknowledgement that there exists a factual dispute as to whether the parties reached an impasse, he maintains that summary judgment is appropriate because Russo implemented the unilateral changes without first notifying Teamsters Local 559 of Russo's intent to discontinue the pension contributions upon the expiration of the collective bargaining agreement.

The inquiry on summary judgment, however, is to determine whether there are genuine issues of material fact which require resolution by the finder of fact. On the present record, a fact finder could conclude that an impasse occurred at the meeting with Bell and the Russos prior to the March 31, 1993 expiration of the collective bargaining agreement. Russo would then be free to implement the proposals reasonably comprehended in its pre-impasse bargaining position, i.e., reducing wages and ceasing pension contributions.[8] On the other hand, a finder of fact could also conclude on the present record that the parties did not reach an impasse

---

8. Francis Russo avers that he informed Bell during the meeting that Russo would cease making health and welfare and pension contributions upon the March 31, 1993 expiration of the collective bargaining agreement. (Docket Entry # 40, Ex. 1). This averment, taken in the context of Francis Russo's deposition testimony, creates a genuine issue of material fact as to whether Russo properly notified the Teamsters Local 559 representative of its intention to terminate pension contributions in April 1993.

before March 31, 1993. In the event Russo could establish that Teamsters Local 559 avoided further bargaining and that it gave the union notice of its intention to cease the pension contributions, the fact finder could then conclude that Russo did not violate section 8(a)(1) and (5) of the NLRA by terminating pension contributions notwithstanding the absence of an impasse. On the other hand, if Russo fails to establish proper notice and delay in bargaining, then a finder of fact could conclude that Russo engaged in an unfair labor practice by unilaterally terminating pension contributions in April 1993.

The issue, however, is for the finder of fact as opposed to this court on summary judgment. Whether the parties reached an impasse at the meeting between Bell and the Russos is a genuine issue of material fact. Whether Francis Russo properly notified Teamsters Local 559 of Russo's intent to cease pension contributions in April 1993 and/or whether such cessation was reasonably contemplated in Russo's pre-impasse proposals are also genuine issues of material fact.[9]

## CONCLUSION

In accordance with the foregoing discussion, Langone's motion for summary judgment with respect to Count II of the amended complaint (Docket Entry # 31) is **DENIED**.

---

9. In addition to the text in the factual background section, see footnote numbers three, five and eight.